

DA 11-0496

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 282

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

RICHARD PATTERSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC-10-38
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Matthew J. Wald, Wald Law Office, Hardin, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        Catherine Truman, Special Deputy Custer County Attorney,
Miles City, Montana

Submitted on Briefs:  May 23, 2012

Decided:  December 11, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 A Custer County jury found Richard Patterson guilty of two counts of sexual intercourse without consent and one count of sexual assault. Patterson appeals from the judgment entered against him by the Sixteenth Judicial District Court. We affirm.

¶2 The issues on appeal are:

¶3 1. Did the District Court's application of Montana's rape shield statute violate Patterson's right to a fair trial under the Montana and the United States Constitutions?

¶4 2. Did the District Court err in refusing to dismiss Counts I and IV on grounds that the State of Montana failed to prove venue?

**BACKGROUND**

¶5 In June of 2010, the State of Montana charged Richard Patterson with three counts of sexual intercourse without consent, one count of felony sexual assault, and one count of attempted sexual assault. The four victims all were acquaintances or friends of Patterson's, and all five charged events were alleged to have occurred at Patterson's home in Miles City, Montana. Count I alleged that on October 18, 2009, Patterson committed the offense of sexual intercourse without consent against A.K., who was then eleven years old. Count II alleged that on May 15, 2010, Patterson committed the offense of sexual intercourse without consent against T.P., an adult woman. Count III alleged that, in May of 2006, Patterson committed the offense of sexual intercourse without consent against J.L., an adult woman. Count IV alleged that in March of 2006, Patterson committed the offense of felony sexual assault against K.W., who was 11 years of age at

2

that time. Count V alleged that, several months after the occurrence alleged in Count IV, Patterson committed the offense of felony attempted sexual assault against K.W.

¶6 Clothing worn on October 18, 2009, by A.K., the victim in Count I, was taken for forensic testing at the Montana State Crime Lab, including DNA testing of a stain discovered on A.K.'s shirt. The DNA testing excluded Patterson as a contributor to the stain, and attributed the stain to an unknown male. Before trial, the State filed a motion in limine based on Montana's rape shield statute, asking the District Court to preclude reference to, or evidence or testimony regarding, the DNA test of the stain on A.K.'s shirt. Patterson opposed the motion in limine, and the District Court heard oral argument on the matter. The court ultimately granted the State's motion and excluded from evidence at trial any mention of the test results concerning the stain on A.K.'s shirt. However, the court allowed evidence and argument that the clothing worn by A.K., and a vaginal swab from her person, were analyzed and that Patterson's DNA was not discovered in that testing.

¶7 The alleged victims all testified at the four-day jury trial, as did various law enforcement officers, A.K.'s and K.W.'s mothers, hospital emergency room personnel, Patterson's roommates, and two state forensic scientists. At the end of the State's case at trial, Patterson moved to dismiss Count V for insufficiency of evidence, and the District Court granted that motion.

¶8 The jury found Patterson not guilty of one of the remaining charges, Count II, but found him guilty of sexual intercourse without consent against A.K. as charged in Count I, sexual intercourse without consent against J.L. as charged in Count III, and felony

3

sexual assault against K.W. as charged in Count IV. At the sentencing hearing, the court sentenced Patterson to concurrent Montana State Prison sentences of one hundred years on Count I, fifty years on Count III, and one hundred years on Count IV.

## DISCUSSION

¶9 *Issue 1. Did the District Court's application of Montana's rape shield statute violate Patterson's right to a fair trial under the Montana and the United States Constitutions?*

¶10 Generally, a trial court has discretion on questions regarding the admission of evidence at trial, and we review the court's evidentiary rulings for abuse of that discretion. *State v. Stock*, 2011 MT 131, ¶ 17, 361 Mont. 1, 256 P.3d 899. However, in exercising its discretion, the trial court is bound by the Rules of Evidence or applicable statutes, and to the extent that the court's ruling is based on an interpretation of an evidentiary ruling or statute, our review is de novo. Moreover, where the court's conclusions of law involve the Constitution or the rules of evidence, our review is, likewise, de novo. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. Here, Patterson raises a constitutional claim—that his right to a fair trial was violated by the trial court's application of Montana's rape shield statute. Since the District Court's interpretation and application of this statute implicate Patterson's state and federal constitutional rights to a fair trial, we review the court's ruling de novo.

¶11 As indicated above, this issue relates to Count I of the Information, sexual intercourse without consent against 11-year-old A.K. A.K. testified at trial that she and her mother were visiting Patterson in his home, and that all three of them were in his bed under the covers with the room light off. Patterson was in the middle, and A.K. thought

4

her mother was sleeping. Patterson pulled up A.K.'s skirt and she felt him unbuttoning his own pants. A.K. testified that she was "too scared to move" when Patterson then moved her underwear to the side and began pushing his hips against her from behind. She felt something on her skin in her "private area" between her legs, and then she felt like that something was inside of her. After Patterson stopped pushing against her and went into the bathroom, A.K. got her mother's attention, and together they left Patterson's house and returned to their own home, where A.K. took a bath. A.K.'s mother called the police and took A.K. to the hospital emergency room, where A.K. was interviewed and examined.

¶12 Montana's rape shield statute, under which the District Court excluded from trial evidence that the shirt worn by A.K. on that night had a DNA stain on it and that DNA testing of the stain had excluded Patterson as a possible contributor of the DNA, provides that, in prosecutions for sexual crimes:

> [e]vidence concerning the sexual conduct of the victim is inadmissible . . . except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease that is at issue in the prosecution.

Section 45-5-511(2), MCA. Patterson argues the District Court's ruling deprived him of his constitutional right to a fair trial. He contends the rape shield statute was not implicated under the facts of this case because of A.K.'s young age. Even if that argument fails, Patterson argues that the exception for "evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease that is at issue in the prosecution" applies here. *See* § 45-5-511(2), MCA.

¶13 In his first line of argument on this issue, Patterson states the sexual privacy of 11-year-old A.K. is not at issue, because *any* sexual conduct with an 11-year-old girl would be illegal. However, Patterson has cited no authority to support his implied proposition that Montana's rape shield statute is limited to victims who have attained a certain chronological age. Nor does § 45-5-511(2), MCA, include a statutory exception allowing the admission of the prior sexual history of a child molestation victim. *See State v. Howell*, 254 Mont. 438, 446, 839 P.2d 87, 92 (1992) (upholding a district court's discretion in excluding evidence of past sexual history of a child molestation victim).

¶14 Secondly, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), and cases from several of our sister states, Patterson argues the District Court's ruling violated his right to a fair trial under the Due Process Clause because he was prevented from presenting a crucial defense. Patterson claims the court's ruling prejudiced his ability to show that another offender committed the crime against A.K., and thus prohibited him from enhancing his transfer of blame argument.

¶15 *Chambers* was a prosecution for the murder of a Mississippi police officer. In that case, the trial court had excluded evidence that a person other than the defendant had confessed to the crime, on hearsay grounds and under a Mississippi evidentiary rule that a party may not impeach his own witness. On appeal, the United States Supreme Court reversed the defendant's conviction, reasoning that, in excluding that evidence, the trial court had denied the defendant's right to due process. *Chambers*, 410 U.S. at 302-03, 93 S. Ct. at 1049-50. It is true that *Chambers* stands for the general proposition that the exclusion of exculpatory evidence that another party has committed a crime may deny a

6

criminal defendant's Sixth Amendment right to a trial in accord with fundamental standards of due process. However, the *Chambers* Court acknowledged that the Sixth Amendment is not absolute, and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S. Ct. at 1046. And, while the cases Patterson has cited from other states are instructive, we must decide this case based on the law as it exists in Montana.

¶16    In the present case, the District Court relied on our Opinion in *State v. Bauer*, 2002 MT 7, 308 Mont. 99, 39 P.3d 689, when it granted the State's motion in limine to exclude evidence under the rape shield statute. In *Bauer*, ¶ 31, we affirmed a trial court's exclusion from evidence of any reference to a DNA analysis showing that seminal fluid on a blanket where the sexual offense occurred did not match the defendant's DNA. Patterson distinguishes this case from *Bauer* by pointing out that, in *Bauer*, the evidence tested was not collected until four months after the alleged sexual crime. While it is true that the evidence was promptly collected in the present case, Patterson has not demonstrated why that distinction makes a difference for purposes of our analysis.

¶17    The rape shield statute "reflects a compelling interest in favor of preserving the integrity of the trial and . . . preventing it from becoming a trial of the victim." *State v. Johnson*, 1998 MT 107, ¶ 19, 288 Mont. 513, 958 P.2d 1182 (*quoting State v. Anderson*, 211 Mont. 272, 283, 686 P.2d 193, 199 (1984)). For that reason, we have upheld the rape shield statute as a legitimate interest justifying curtailment of the constitutional right to confront witnesses. *See State v. Van Pelt*, 247 Mont. 99, 805 P.2d 549 (1991). We also have recognized that, under the statute, there are only two types of instances in which the

7

sexual conduct of a victim may be admitted. First, such evidence may be admitted when the conduct involved the defendant as a participant. Second, such evidence may be admissible when an issue exists as to the origin of semen, pregnancy, or disease, and the victim's sexual conduct is probative on that issue. *State ex rel. Mazurek v. District Court*, 277 Mont. 349, 354, 922 P.2d 474, 477 (1996).

¶18 No claim has been made that the evidence concerning the stain on A.K.'s shirt is related to the first type of instance that might justify admission of sexual conduct by A.K.: prior conduct involving Patterson as a participant. As to the second type of instance, we first observe that the prosecution of Patterson did not put the origin of the DNA on A.K.'s shirt at issue. Further, evidence that the DNA stain on A.K.'s shirt was from a male other than Patterson, in and of itself, is of no probative value as to a "specific instance[] of [A.K.'s] sexual activity," as referenced under § 45-5-511(2), MCA, because the stain itself does not reveal how or when it got there. Patterson wanted to cross-examine A.K. on the origins of the stain on her shirt. But that would do nothing to demonstrate Patterson's innocence of the crime with which he was charged. Rather, such evidence would simply go towards turning the case into a trial of A.K., the victim.

¶19 Exclusionary rules do not abridge a defendant's right to present a defense as long as the rules are not arbitrary or disproportionate to their purpose. *Johnson,* ¶ 22. Here, we observe that the District Court permitted the defense to argue that A.K.'s rape allegation was inherently incredible and that A.K. fabricated the rape allegation against Patterson simply to get attention from her mother. In his closing argument, defense

counsel also reminded the jury of the expert testimony that Patterson's DNA was not found on A.K.'s clothing or person.

¶20 Under the circumstances presented here, we hold that the District Court did not err in prohibiting use at trial of the evidence that DNA from a male other than Patterson was found on A.K.'s shirt.

¶21 *Issue 2. Did the District Court err in refusing to dismiss Counts I and IV on grounds that the State of Montana failed to prove venue?*

¶22 Proper venue is a jurisdictional fact that the State must prove at trial. *State v. Diesen*, 2000 MT 1, ¶ 14, 297 Mont. 459, 992 P.2d 1287. In general, including in this case, a criminal charge must be filed in the county in which the offense was committed. *See* § 46-3-110(1), MCA. *See also* Mont. Const. art. II, § 24 ("In all criminal prosecutions the accused shall have the right to . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same."). We review a district court's legal conclusion regarding venue under a de novo standard of review. *Diesen*, ¶ 11.

¶23 At the end of the State's case at trial, Patterson moved to dismiss all five counts charged against him on grounds that the State had failed to elicit sufficient testimony to support the allegations that the offenses occurred in Custer County. The District Court denied that motion to dismiss. Patterson makes a similar argument on appeal, but now limits it to Counts I and IV.

9

¶24 This Court has ruled direct testimony that an offense was committed in a specific county is not required to prove venue. Venue may be sufficiently proven by witnesses' references to either a city or city streets. *See State v. Johnson*, 257 Mont. 157, 161, 848 P.2d 496, 498 (1993). More recently, we have ruled that the State need only show that the only rational conclusion to be drawn from the facts and testimony is that the crime was committed in the county alleged. *See State v. Galpin*, 2003 MT 324, ¶ 30, 318 Mont. 318, 80 P.3d 1207.

¶25 Here, it was uncontroverted that Patterson committed the charged crimes at his home. A.K., the victim of Count I, testified that Patterson raped her at his house. K.W., the victim of Count IV, testified that Patterson raped her in his bed, "in [his] room." Several witnesses testified that Patterson's home was located at 23 Holly Street in Miles City, Custer County. The only rational conclusion to be drawn from the testimony is that the crimes occurred in Custer County. We hold that the District Court did not err in denying Patterson's motion to dismiss Counts I and IV.

¶26 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

10