DA 14-0417

FILED

10/04/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0417

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 244

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JORY ROBERT HOFF,

      Defendant and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2013-247
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Kristen L. Peterson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, Melissa Broch, Deputy County Attorney, Helena, Montana

                  Submitted on Briefs:  August 17, 2016

                            Decided:  October 4, 2016

Filed:

                                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     Jory Robert Hoff (Hoff) appeals from final judgment entered in the First Judicial District Court, Lewis and Clark County, after a jury found him guilty of sexual assault and sexual intercourse without consent.  We affirm.

## ISSUES

¶2     Hoff raises three issues on appeal:

1. *Did the District Court violate Hoff's constitutional right to a public trial when it closed to the public a hearing on the admissibility of the victim's prior allegations of sexual abuse?*

2. *Did the District Court err in preventing Hoff from questioning the victim about prior allegations of sexual abuse?*

3. *Did the District Court err by not disclosing information contained in confidential records after conducting an* in camera *review?*

## BACKGROUND

¶3     I.L. was born in 2002, and her parents separated soon thereafter.  I.L. lived with her mother, except for a period between 2008 and 2010, when I.L. lived on and off with her father, her father's sister, and her maternal grandparents.  In 2011, I.L.'s mother began dating and living with Hoff.  I.L.'s mother worked evenings twice a week and left I.L. in the care of Hoff or I.L.'s maternal grandfather on those nights.

¶4     In July 2013, when I.L. was 11 years old, she had an argument with her mother and said she wanted to live with her father.  I.L.'s parents arranged for her father to take I.L. to his house, where he lived with his new wife.  Because I.L.'s father traveled for work, I.L. was often left in her stepmother's care.  This living arrangement lasted for about two weeks, until I.L's father and stepmother were both scheduled to travel out of

2

state.  I.L.'s stepmother offered to take I.L. with her, but I.L.'s mother refused to give permission to take I.L. out of state.

¶5      Because both her father and stepmother would be away, I.L.'s stepmother told I.L. she would have to go back to her mother's house.  I.L. became upset and started crying. When her stepmother asked what was wrong, I.L. said Hoff had sexually assaulted her when she was staying with Hoff and her mother.  I.L.'s stepmother then called the police and relayed what I.L. had said.  I.L. underwent a forensic interview two days later, during which she said Hoff had been touching her inappropriately almost every night for two years.  Hoff was arrested the day of I.L.'s forensic interview.  He has denied that he touched I.L. inappropriately.

¶6      During pretrial discovery, the State and Hoff jointly moved for an *in camera* review of certain records maintained by the Department of Public Health and Human Services (DPHHS) pertaining to I.L.'s accusations against Hoff.  The District Court conducted its *in camera* review and released relevant records.  These records contained references to statements I.L. made when she was four, which accused two other men of sexual assault.  Hoff then filed a second motion for *in camera* inspection of additional DPHHS records regarding these prior accusations.  The District Court reviewed and released four more pages of DPHHS records, with redactions.

¶7      Before trial, Hoff requested a preliminary hearing on the admissibility of the prior accusations made by I.L.  Hoff maintained those accusations were false and therefore relevant to the veracity of I.L.'s present accusations against Hoff.  In *State ex rel. Mazurek v. Dist. Court of the Mont. Fourth Judicial Dist.*, 277 Mont. 349, 357–58, 922

3

P.2d 474, 479–80 (1996), we adopted a three-part test governing the admissibility of prior accusations of sexual assault. That test requires a district court to determine, among other things, that the prior accusations were in fact false. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480. Hoff requested the *Mazurek* hearing to give him the opportunity to show the prior accusations were false and therefore admissible at trial.

¶8 On the day of the *Mazurek* hearing, the State asked the District Court to close the hearing to the public. The State reasoned that the hearing would involve confidential and sensitive records detailing the prior accusations, which necessitated closure to maintain confidentiality. Hoff objected to closing the hearing, arguing that no statute or precedent supported closing the hearing simply because it dealt with sensitive material. Because the whole trial concerned sensitive material, Hoff maintained that the hearing should remain open. Ultimately, the District Court closed the hearing to the public, although witnesses slated to testify at the hearing remained in the courtroom throughout the hearing.

¶9 After the hearing, the District Court issued a written order denying the admission of the prior accusations. The District Court stated:

> [T]he evidence does not show, as required by *Mazurek*, that the accusations were <u>in fact false</u>. Further, while the accusations are certainly suspicious and raise question in the Court's mind, it has not been shown to the satisfaction of this Court that the prior accusations were in fact false. Here, the Court is focusing on *Mazurek*'s requirement that the accusations be "in fact false." In the view of this Court, this requirement was fleshed out by the Supreme Court's holding that the prior assault allegations need to be adjudicated to be false or admitted to be false. Here, there has been no such adjudication or admission.

4

(emphasis in original). Because the District Court found the second condition of *Mazurek* was not satisfied, it prohibited Hoff from cross-examining I.L. about the prior accusations at trial.

¶10 Following a four-day trial, the jury found Hoff guilty on both counts.

## STANDARDS OF REVIEW

¶11 This Court's review of constitutional questions is plenary. *State v. Johnson*, 2015 MT 221, ¶ 10, 380 Mont. 198, 356 P.3d 438. We review a district court's evidentiary ruling for an abuse of discretion. *State v. MacKinnon*, 1998 MT 78, ¶ 12, 288 Mont. 329, 957 P.2d 23. A court abuses its discretion if it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Henson*, 2010 MT 136, ¶ 19, 356 Mont. 458, 235 P.3d 1274. To the extent a court's evidentiary ruling is based on an interpretation of a constitutional right, our review is de novo. *State v. Patterson*, 2012 MT 282, ¶ 10, 367 Mont. 186, 291 P.3d 556.

## DISCUSSION

¶12 *1. Did the District Court violate Hoff's constitutional right to a public trial when it closed to the public a hearing on the admissibility of the victim's prior allegations of sexual abuse?*

¶13 The Sixth Amendment to the U.S. Constitution provides criminal defendants the "right to a speedy and public trial." U.S. Const. amend. VI. The public trial right benefits the accused to the extent "the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Ga.*, 467 U.S. 39, 46, 104 S. Ct. 2210, 2215 (1984) (internal

5

quotation omitted).  Open proceedings are particularly important in pretrial suppression hearings.  *Waller*, 467 U.S. at 47, 104 S. Ct. at 2216.

¶14    Nevertheless, the right to a public trial may yield to "'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215 (quoting *Press-Enter. Co. v. Super. Court of Cal.*, 464 U.S. 501, 510, 104 S. Ct. 819, 824 (1984)).  Following *Waller*, the right to a public trial may give way if:  (1) the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the court considers alternatives to closing the proceeding that would still protect the interest; and (4) the court makes findings adequate to support the closure.  *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216.

¶15    Preventing the disclosure of sensitive information is a sufficiently strong interest to override the general presumption of openness in trials.  *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215.  Few cases present that interest more starkly than the sexual assault of a minor.  In *Globe Newspaper Co. v. Super. Court*, 457 U.S. 596, 102 S. Ct. 2613 (1982), the U.S. Supreme Court noted that "safeguarding the physical and psychological well-being of a minor" is a compelling interest, but held unconstitutional a law that required automatic closure during a minor victim's testimony.  *Globe Newspaper Co.*, 457 U.S. at 607–08, 102 S. Ct. at 2620–21.  Instead, courts should consider the nature of the crime, the age and maturity of the victim, and the victim's wishes before making a case-by-case decision to close the trial for the victim's testimony.  *Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621.  No one factor is determinative, and the decision to

6

close a hearing is ultimately left to the trial court's discretion. *Bell v. Jarvis*, 236 F.3d 149, 171 (4th Cir. 2000) (citing *Globe Newspaper Co.*, 457 U.S. at 609, 102 S. Ct. at 2621).

¶16 While the final element of the *Waller* test requires findings that support closure, the findings do not need to be exceptionally detailed. Rather, the trial court's findings need only be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co.*, 464 U.S. at 510, 104 S. Ct. at 824; *accord Waller*, 467 U.S. at 45; *Bell*, 236 F.3d at 172.

¶17 Hoff argues the District Court's closure of the *Mazurek* hearing violated his right to a public trial. Specifically, Hoff contends the State's interest—protecting the confidentiality of sensitive information that could further injure I.L.—is not substantial enough to justify closure. Even if the interest was substantial, Hoff maintains that the State failed to show, and the District Court failed to find, that the interest was likely to be prejudiced and that there were no reasonable alternatives to closing the hearing. Hoff reasons that leaving the *Mazurek* hearing open would not jeopardize the State's interest for two primary reasons. First, significant portions of the hearing concerned topics that did not implicate I.L.'s private information, like the procedures used in DPHHS investigations. Second, those portions of the hearing that did touch I.L.'s private information could be redacted or otherwise anonymized for her protection.

¶18 The right to a public trial clearly attaches to pretrial suppression hearings, including a *Mazurek* hearing. Thus, Hoff's right to a public *Mazurek* hearing will only yield to an overriding interest that satisfies the *Waller* analysis. Although the District

7

Court's decision to close the hearing did not set forth detailed findings, we conclude for the reasons set forth below that the District Court did not err in closing the *Mazurek* hearing.

¶19 The Montana Legislature has created two distinct statutory safeguards against the disclosure of information that could cause further emotional injury to a minor victim of sexual assault. First, DPHHS records and reports concerning child abuse and neglect are deemed confidential by § 41-3-205(1), MCA. These records may be disclosed if, after an *in camera* review, a court "finds disclosure to be necessary for the fair resolution of an issue before it." Section 41-3-205(2), MCA. Second, to avoid putting a victim of sexual assault on trial for his or her past conduct, evidence of a victim's prior sexual conduct is generally inadmissible under the "rape shield statute," § 45-5-511(2), MCA. Because *Mazurek* hearings involve evidence of prior sexual conduct that may be protected by the rape shield statute, we anticipated in *Mazurek* that these hearings would be conducted *in camera*. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480.

¶20 In the present case, the State cites both of these statutory provisions as grounds for closing the *Mazurek* hearing. As made clear in *Globe Newspaper Co.*, shielding I.L. from further psychological injury is a sufficiently compelling interest to justify closure. While Hoff contends the hearing could have remained public with some redactions of the documents to be presented, the District Court had already reviewed the documents *in camera* and was aware of their contents. We have also reviewed the contents of the confidential documents. We are unconvinced that the records could have been anonymized to protect I.L., as the documents were rife with identifying information.

8

Simply initializing I.L.'s name would not have protected her privacy because her mother testified at the hearing. To go a step further and redact all references to I.L. or her statements would hardly serve Hoff's purpose of showing I.L. lied in making the prior accusations. We therefore conclude that there were no reasonable alternatives for protecting I.L.

¶21 Hoff requested the *Mazurek* hearing to explore in detail the facts and circumstances surrounding the prior accusations. At the hearing, Hoff presented DPHHS records and questioned witnesses involved in the investigation of the prior accusations. Invariably, some of Hoff's evidence focused on the procedures used to investigate the prior accusations. To the extent this foundational evidence addressed investigation procedures in general, the interest in protecting I.L. was not in great jeopardy. Still, the fact that Hoff was required to lay some foundation before exploring the accusations does not mean the District Court should have opened and closed the hearing every time a witness's testimony shifted in purpose. We do not read *Waller* to impose such an impractical burden on trial courts. Thus, we conclude the closure was no broader than necessary to protect I.L.

¶22 The District Court closed the hearing after brief oral arguments from both parties. Because the District Court's decision was not made in writing, the record does not contain many detailed findings. Nevertheless, the record provides sufficient context to show why the District Court closed the hearing. I.L. was four at the time of the prior accusations and eleven at the time of Hoff's trial. The prior accusations concerned sexual assault of a minor, a crime that demonstrates contempt for the physical and psychological

wellbeing of the most vulnerable members of our communities. The record gives no indication of I.L.'s wishes regarding public disclosure of the prior accusations, but *Globe Newspaper Co.* does not require the court to ascertain a victim's wishes in every case. The victim's wishes are one of several factors to be considered, and no single factor is dispositive. *Globe Newspaper Co.*, 457 U.S. at 608, 102 S. Ct. at 2621. In this case, the nature of the crime, the age and maturity of I.L., and the need to safeguard her physical and psychological wellbeing are all factors that favor closing the *Mazurek* hearing. Because the weight of these factors was apparent when the District Court orally closed the hearing, we see no reason to fault the District Court for not explaining them in detail. As in *Bell*, the trial judge here "possessed a great deal of information concerning the case before him, and certainly knowledge sufficient to exercise the discretion afforded him under both federal and state law." *Bell*, 236 F.3d at 171–72. We therefore conclude the District Court did not err in closing the *Mazurek* hearing.

¶23 *2. Did the District Court err in preventing Hoff from questioning the victim about prior allegations of sexual abuse?*

¶24 Criminal defendants have the right to confront witnesses against them. U.S. Const. amend. VI. "'[L]imiting or barring a defendant's cross-examination of a complaining witness in a sex crime case where there is evidence of prior *false* accusations restricts defendant's enjoyment of the worth of his constitutional rights to confront witnesses.'" *Mazurek*, 277 Mont. at 358, 922 P.2d at 479 (emphasis added) (quoting *State v. Anderson*, 211 Mont. 272, 284, 686 P.2d 193, 200 (1984)). If the prior accusations were true, evidence of the accusations would be irrelevant, highly prejudicial,

10

and inadmissible. *Mazurek*, 277 Mont. at 356, 922 P.2d at 479 (citing *Anderson*, 211 Mont. at 284, 686 P.2d at 200). A court may only admit evidence of prior accusations if the court first determines: (1) the accusations were in fact made; (2) the accusations were in fact false; and (3) the evidence is more probative than prejudicial. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480 (citing *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989)). We have explained the "in fact false" caveat as meaning the accusations must be adjudicated or admitted to be false. *Mazurek*, 277 Mont. at 359, 922 P.2d at 480. For the purposes of a *Mazurek* hearing, "adjudicated" does not necessarily mean a court has previously heard evidence and rendered a final judgment on the accusation. Instead, the court conducting the *Mazurek* hearing may, after hearing sufficient evidence, adjudicate the falsehood of a previous accusation in the *Mazurek* hearing. *Mazurek*, 277 Mont. at 357, 922 P.2d at 479.

¶25 I.L.'s prior accusations of sexual assault made when she was four years old were referred to DPHHS. The agency's reports on the prior accusations indicate a child protection team reviewed the claims. At the *Mazurek* hearing, a representative from Child Protective Services testified that her department did not investigate the accusations because they did not implicate a parent in the abuse. Instead, the DPHHS reports indicate the accusations were referred to law enforcement for investigation. The record does not show any further action taken by law enforcement.

¶26 Hoff argues the District Court misconstrued the "in fact false" requirement as a strict burden to show a formal adjudication or admission. Hoff calls our attention to language from the District Court's order, which bears repeating:

11

> Here, the Court is focusing on *Mazurek*'s requirement that the accusations be "in fact false." In the view of this Court, this requirement was fleshed out by the Supreme Court's holding that the prior assault allegations need to be adjudicated to be false or admitted to be false. Here, there has been no such adjudication or admission.

Hoff asserts that this language shows the District Court expected a formal adjudication or admission. However, full context shows the District Court considered Hoff's evidence and found it insufficient to conclude the accusations were false.

¶27 If the District Court believed that only formal adjudication or admission could show the prior accusations were in fact false, only two pieces of evidence would be relevant: proof of an adjudication or proof that I.L. admitted the prior allegations were false. Hoff presented no evidence of an admission of falsehood at the hearing, but he did put on evidence from investigators and others in an attempt show the accusations could not be true. Hoff did not argue, nor could he credibly argue, that the actions of DPHHS and law enforcement in investigating allegations of childhood sexual assault constituted an adjudication of the allegations' truth. Consequently, Hoff's evidence would be irrelevant and inadmissible if the District Court erroneously believed only a formal adjudication could demonstrate the falsity of the allegations. In fact, the District Court considered Hoff's evidence. Ultimately, the District Court found the accusations "certainly suspicious," but concluded this suspicion was not substantial enough to show the accusations were in fact false.

¶28 Because the District Court evaluated Hoff's evidence in accord with *Mazurek*, we will overturn its decision to exclude the prior accusations only if we find an abuse of discretion. Hoff presents an array of facts which he believes shows the prior accusations

12

could not be true. We cannot agree that these seven-year-old claims were established to be false, nor does the record before us demonstrate that the District Court exceeded the bounds of reason or acted without conscientious judgment. We therefore conclude that the District Court did not abuse its discretion in denying admission of the prior accusations.

¶29 *3. Did the District Court err by not disclosing information contained in sealed records after conducting an* in camera *review?*

¶30 Criminal defendants have a due process right to information that is favorable to their defense and material to guilt or punishment. *State v. Johnston*, 2014 MT 329, ¶¶ 6-9, 337 Mont. 291, 339 P.3d 829 (citing *Pa. v. Ritchie*, 480 U.S. 39, 57, 107 S. Ct. 989, 1001 (1987)). In cases involving alleged sexual assault of a minor, this right extends to confidential files compiled by DPHHS. *Johnston*, ¶¶ 6–9. Evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ritchie*, 480 U.S. at 57, 107 S. Ct. at 1001.

¶31 After an *in camera* review of the DPHHS files regarding I.L.'s prior allegations, the District Court withheld certain portions of the files from the parties. Hoff has asked this Court to review the files the District Court kept sealed to determine if they contain information that could be material to Hoff's defense. We have reviewed the sealed files *in camera* and determined that they do not contain any new, material information that the parties lacked at trial. The only redactions were for the protection of personally identifiable information. Because there is no reasonable probability that the outcome of

13

Hoff's trial would have been different with the release of the files, Hoff's due process right was not violated. *See Ritchie*, 480 U.S. at 57, 107 S. Ct. at 1001. We therefore conclude that the District Court did not err in keeping the records sealed.

## CONCLUSION

¶32 For the foregoing reasons, we affirm the judgment of the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE