

DA 19-0365

FILED

08/31/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0365

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 218N

STATE OF MONTANA,

    Plaintiff and Appellee,

v.

MONTE BLAIN GOSSARD,

    Defendant and Appellant.

FILED

AUG 3 1 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DC 17-10
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Tammy A. Hinderman, Assistant
Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        Merle Raph, Toole County Attorney, Chad Parker, Special Deputy County
Attorney, Shelby, Montana

Submitted on Briefs:  July 21, 2021

Decided:  August 31, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 Monte Blain Gossard appeals from the denial of his motion by the Ninth Judicial District Court, Toole County, at the start of trial, to reattach a pannier to decedent Randy Prewett's motorcycle, which had been removed during the State's investigation, and his motion for new trial premised on similar grounds.

¶3 On May 14, 2016, Gossard and Prewett participated by motorcycle in a "poker run," a statutorily sanctioned event wherein participants travel to designated casino locations to obtain a playing card, and eventually accumulate a poker hand, which is then ranked among the hands of the participants. *See* § 23-5-318, MCA. At about 6:45 p.m., having visited at least six casinos that day and having drank at each one, the two were riding south on Interstate 15 toward Shelby, Montana, when they passed a commercial truck at a high rate of speed. The truck was driven by Lisa Worthing, who was also a motorcyclist. Worthing noted that, as the riders progressed in the left-hand or passing lane, Prewett, riding an orange motorcycle, led on the outer, leftward section of the lane, while Gossard, on his blue motorcycle, was "half a bike length" behind Prewett in the inner, right side of the passing lane. The riders drove around a sharp curve and out of sight of Worthing, who

2

rounded the curve into a field of motorcycle debris, with Gossard and his bike lying on the side of the highway, and barely managed to stop without hitting Gossard or his bike. She called 911 and remained at the scene until authorities arrived.

¶4 Scene investigation revealed that Prewett's motorcycle went off the left side of the road into and across the median strip, where he hit a divot that ejected him onto the pavement of the northbound lanes. Gossard's motorcycle also went off the road to the left, but he stayed along the shoulder before crashing and coming to a stop along the southbound pavement. Gossard sustained injuries, including a break to his left ankle, and was able to recover. Tragically, Prewett was pronounced dead at the scene at 7:08 p.m., with an official time of death of 6:45 p.m., indicating his death was instantaneous. The toxicological analysis on Gossard's blood, drawn at 7:39 p.m., indicated a blood alcohol concentration of .132, while Prewett registered .159. Neither rider wore a helmet.

¶5 Despite having no memory of the accident, Gossard maintained, given his experience as a rider, that he did not initiate contact with Prewett and cause the accident. From an analysis of the evidence found on the road and bikes, including scuffs on the left side of the front wheel of Gossard's motorcycle and markings on the right rear of Prewett's motorcycle on and near the exhaust pipe, the State concluded that Gossard failed to negotiate the highway curve and veered into the right side of Prewett's bike, with initial contact being between the left side of Gossard's front wheel and left foot peg, and Prewett's right rear exhaust pipe and pannier. On March 14, 2017, the State charged Gossard with negligent homicide under § 45-5-104, MCA. On July 9, 2018, Gossard filed a motion to

3

allow the jury to view the motorcycles ridden by Gossard and Prewett on the date of the accident "so that the jury can determine for itself if it was possible for the bikes to have contact in the manner alleged by the State." The District Court granted the motion on August 7, 2018.

¶6 On the eve of the trial, which began September 17, 2018, the defense inspected the motorcycles and discovered the right rear pannier for Prewett's motorcycle, though still available, had been detached from the motorcycle sometime in the two years it had been held in evidence storage. At an in-chambers conference the next morning, Gossard requested the pannier be reattached, arguing the reason for his request for a jury viewing of the motorcycles was to show the pannier protruded too far beyond the exhaust pipe for Gossard's front wheel to have made contact with Prewett's motorcycle, as alleged. The State objected, and the District Court denied the request, explaining it was concerned "that putting it back would create evidence that never existed," or that "it would not be able to be put back exactly how it was, and with one of the purposes to put it back being, to have an expert analyze, or look at something[.]"[1] Gossard then withdrew his request for a jury viewing.

---

[1] The in-chambers conference was not recorded or transcribed. In response to an unopposed motion by Gossard to establish the record, this Court ordered consideration of the matter before the District Court, which held a hearing and supplemented the record for purposes of this appeal. On October 3, 2020, the court issued an order summarizing what the parties had presented as the substance of the conference, along with its recollection.

¶7     At trial, the State introduced 84 investigative photographs of tire tracks, skid marks, paint transfers between the motorcycles, and collision marks and impacts. Several expert witnesses testified in support of the State's theory that, when rounding the curve, the alcohol-impaired Gossard failed to maintain a safe driving distance, closing and striking the right rear side of Prewett's motorcycle, briefly advancing together but then knocking Prewett off the roadway. The State offered that Gossard's left broken ankle was consistent with being caught between the motorcycles. The experts opined that the peg protruding from Gossard's engine bar struck Prewett's right pannier and Gossard's tire struck Prewett's right exhaust pipe, leaving a tire mark on the hot muffler. However, no side-by-side positional measurements or photographs of the two bikes were taken or presented. The three-day jury trial, held September 17-19, 2018, concluded in a guilty verdict. Gossard filed a motion for new trial, arguing the State had negligently spoiled the motorcycle evidence, and the District Court denied the motion. Gossard appeals, challenging the District Court's rulings on the motorcycle evidence.

¶8     A district court has broad discretion to determine the relevancy and admissibility of evidence and we review those decisions for abuse of discretion. *See State v. Walker*, 2018 MT 312, ¶ 11, 394 Mont. 1, 433 P.3d 202; *State v. Lake*, 2019 MT 172, ¶ 22, 396 Mont. 390, 445 P.3d 1211. A court abuses its discretion if it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Walker*, ¶ 11 (citing *State v. Spottedbear*, 2016 MT 243, ¶ 9, 385 Mont. 68, 380 P.3d 810). If an abuse of discretion is demonstrated, we then determine

whether the abuse constitutes reversible error affecting substantial rights or "was of such character as to have affected the outcome of the trial." *State v. Quinlan*, 2021 MT 15, ¶ 16, 403 Mont. 91, 479 P.3d 982 (citing *State v. Wilson*, 2011 MT 277, ¶ 17, 362 Mont. 416, 264 P.3d 1146) (internal quotations omitted). Where a ruling relies on its interpretation of a rule of evidence, our review is de novo. *Lake*, ¶ 22 (citing *Walker*, ¶ 11). To the extent that an evidentiary decision generates constitutional concerns, our review is de novo. *State v. Hoff*, 2016 MT 244, ¶ 11, 385 Mont. 85, 385 P.3d 945 (citing *State v. Patterson*, 2012 MT 282, ¶ 10, 367 Mont. 186, 291 P.3d 556).

¶9 Criminal defendants have a constitutional right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986); *see, e.g.*, *State v. Reams*, 2020 MT 326, ¶ 18, 402 Mont. 366, 477 P.3d 1118. "That opportunity would be an empty one if the State were permitted to exclude *competent, reliable evidence*[.]" *Crane*, 476 U.S. at 690, 106 S. Ct. at 2147 (emphasis added). This right is not absolute and may be "'abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.'" *State v. Jay*, 2013 MT 79, ¶ 32, 369 Mont. 332, 298 P.3d 396 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006)); *accord Holmes*, 547 U.S. at 325-26, 126 S. Ct. at 1731-32 (illustrating "arbitrary" or "disproportionate" rules); *State v. Johnson*, 1998 MT 107, ¶ 22, 288 Mont. 513, 958 P.2d 1182 (citing *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998)). To ensure that an exclusion of evidence is neither arbitrary nor disproportionate, a court

6

must balance the rule excluding the evidence with the defendant's right to present a defense, an analysis that "must 'require that the defendant's proffered evidence is not merely speculative or unsupported.'" *State v. Aguado*, 2017 MT 54, ¶ 33, 387 Mont. 1, 390 P.3d 628 (quoting *State v. Colburn*, 2016 MT 41, ¶ 25, 382 Mont. 223, 366 P.3d 258); *see also State v. Lindberg*, 2008 MT 389, ¶ 56, 347 Mont. 76, 196 P.3d 1252 (balancing rape shield exclusionary rule against defendant's right to present a defense). The constitutional deprivation of a defendant's Sixth Amendment right to present a complete defense is a trial error subject to harmless error review. *State v. Mercier*, 2021 MT 12, ¶ 31, 403 Mont. 34, 479 P.3d 967 (citing *United States v. Carter*, 907 F.3d 1199, 1210 (9th Cir. 2018)); *see Crane*, 476 U.S. at 691, 106 S. Ct. at 2147; *accord State v. Van Kirk*, 2001 MT 184, ¶¶ 38-40, 306 Mont. 215, 32 P.3d 735 (differentiating "structural errors," which are automatically reversible, from "trial errors," which are subject to harmless error analysis).

¶10 Gossard argues the District Court's rulings deprived him of a meaningful opportunity to present a complete defense as required by *Crane*, noting the State presented no witnesses to the collision itself and no photographs of the two motorcycles side-by-side. He asks this Court to reverse his conviction, require reattachment of the pannier, and remand for new trial. Gossard argues that even if reattachment of the pannier "exactly how it was" failed, the jury could nonetheless have been provided an opportunity to compare the two bikes side-by-side or in three dimensions substantially as they were, with any change to the condition being "adequately explained," as we noted in *State v. Ingraham*,

7

1998 MT 156, ¶ 95, 290 Mont. 18, 966 P.2d 103. Our statement in *Ingraham*, ¶ 95, included a non-exclusive list of factors to be considered by a trial court's discretionary evidence rulings, but we conclude here that, under the circumstances, the District Court did not abuse its discretion, given its uncertainty about whether the pannier could be reattached properly on the morning of trial, and that expert or even lay opinions may be drawn from an improper reattachment. The District Court had to consider whether presenting the motorcycles with reattached pannier and an "explanation" of the differences, if any, may have resulted in juror confusion. *See* M. R. Evid. 403; *State v. Gone*, 179 Mont. 271, 276-77, 587 P.2d 1291, 1295 (1978) (reasoning that the risk of misleading the jury with reconfigured evidence outweighed criminal defendant's right to present cumulative evidence).

¶11 We further conclude the exclusion of the evidence was not arbitrary or disproportionate when weighed against Gossard's right to a meaningful opportunity to present a defense. *Aguado*, ¶ 33. Gossard offered little beyond his attorney's assertions to demonstrate what premise he was deprived from establishing that could not have been presented through the other extensive available evidence, including the motorcycles' respective positioning. As the State argues, Gossard presented no affidavits, reports, or potential witness testimony to support his claim that reattachment of the pannier would have provided an opportunity to contest the State's case not available by way of the other evidence, because "[a]ll the necessary information needed to recreate the spatial

8

relationships by mathematical estimations and geometric calculations was available to the defense."

¶12 Assuming arguendo there was error in the ruling, we conclude the error would be harmless, as a viewing of the motorcycles would have been cumulative of the extensive photographic evidence presented at the trial. *Van Kirk*, ¶ 43. We have previously held that a jury view is unnecessary when extensive evidence in other mediums is exhibited at trial. *Gone*, 179 Mont. at 276, 587 P.2d at 1294-95.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review, which the District Court correctly applied.

¶14 Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9