FILED

08/16/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0614

DA 19-0614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 163

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

GARY HANSEN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 13-133(b)
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Chad Wright, Appellate Defender, Carolyn Gibadlo, Assistant Appellate
Defender, Helena, Montana

       For Appellee:

           Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

           Joshua Racki, Cascade County Attorney, Jennifer Quick, Amanda
Lofink, Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  May 11, 2022

Decided:  August 11, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Gary Hansen appeals the August 30, 2019 Sentencing Order and Judgment following his conviction in the Eighth Judicial District Court, Cascade County, of Count I: Incest, a felony, in violation of § 45-5-507, MCA. We affirm and restate the issue on appeal as follows:

*Whether the District Court erred excluding evidence of the complaining witness's prior statements regarding an alleged "false accusation" of sexual assault.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Hansen was accused of committing incest against his granddaughter, K.O. The State charged Hansen with four counts of incest and one count of obstructing a peace officer. The State amended the charge to felony sexual assault before trial. At the June 2015 trial, Hansen pled "no contest." This Court reversed, holding that the district court erred by accepting Hansen's "no contest" plea to a sexual offense, and remanded for a trial. *State v. Hansen*, 2017 MT 280, 389 Mont. 299, 405 P.3d 625 (overruled in *Gardipee v. Salmonsen*, 2021 MT 115, ¶ 10, 404 Mont. 144, 486 P.3d 689 to the extent it failed to "distinguish between an illegal sentence and an invalid plea").

¶3 The State reinstated the original charges in 2017 and eventually amended the Information to one count of incest. Prior to trial, the State sought to exclude evidence that K.O. had made two prior allegations of sexual assault. In a 2013 forensic interview, when K.O. was eight years old, she discussed involvement with her male cousin, A.G.H., when they were both about five years old. In 2018, K.O. disclosed to a female cousin that she was in a sexual relationship with her mother's then boyfriend, Francisco Medina.

2

¶4 The District Court held an evidentiary hearing on January 9, 2019, pursuant to *State ex rel. Mazurek v. Dist. Ct. of the Mont. Fourth Judicial Dist.*, 277 Mont. 349, 922 P.2d 474 (1996), receiving testimony from K.O., A.G.H., Medina, and others. The video of the 2013 forensic interview was also entered into evidence. The District Court ruled that K.O.'s accusation about Medina was admissible, but K.O.'s statements regarding A.G.H. were not admissible because there was not "adequate evidence presented to prove that an allegation was made or that it was false."

¶5 In May 2019, a five-day jury trial convened. The jury convicted Hansen of incest and the court sentenced him to the Montana State Prison for a 100-year sentence, with 50 years suspended, and a 10-year parole restriction.

¶6 The facts underlying Hansen's conviction are as follows: Hansen's biological granddaughter, K.O., disclosed in 2013 that Hansen had been sexually assaulting her since she was approximately three years old. Her earliest memory of the abuse involved "playing a game" in Hansen's living room with all the lights off where she would attempt to turn off the T.V. Hansen made K.O. play this game naked, and afterwards would sexually assault her. For several years, Hansen would sexually abuse K.O. in various rooms throughout his home and in his vehicle. Hansen threatened K.O., telling her that if she told anyone about the abuse he would go to jail. K.O. was also worried that if she disclosed the abuse, she would lose her pet bird that lived at Hansen's house.

¶7 In February 2013, K.O. disclosed the abuse to a school counselor, and the matter was referred to law enforcement. Paula Samms, a licensed clinical professional counselor, conducted forensic interviews of K.O., the first one on February 22, 2013, and the second

3

on March 26, 2013. During the February interview, K.O. described that Hansen routinely sexually assaulted her, that it hurt, left her genitals red, and once she thought she was bleeding. K.O. had difficulty describing the incidents, but with the help of a diagram and drawings, she was able to convey where on her body Hansen had touched her. During this interview, the following exchange occurred between K.O. and Samms:

K.O.: My Grandpa told me not to tell anyone [about the abuse].

SAMMS: Okay. So your Grandpa told you not to tell anyone? Did he say something would happen if you told?

K.O.: That he would go to a jail.

SAMMS: He said that he would go to a jail? Okay. Okay. Well, thanks for letting me know that. You know when someone tells you to keep a secret like about hurting you or touching you or something like that, that's an important one to tell, even when you're scared. Did he say anything else would happen if you told?

K.O.: [shakes head]

SAMMS: No? Did you ever tell anyone else besides this lady that you knew from Eastgate? Like a friend or something like that?

K.O.: I told my cousin.

SAMMS: You did?

K.O.: That Grandpa was sleeping with me.

SAMMS: Okay. What's your cousin's name?

K.O.: [A.G.H.]

SAMMS: [A.G.H.] Is [A.G.H.] older than you or younger than you?

K.O.: I don't know . . . .

.    .    .

4

SAMMS:     How old were you when you told [A.G.H.]?

K.O.:      Maybe about five.

SAMMS:     About five?  Did [A.G.H.] say something when you told him?

K.O.:      No.  He used to do it, too.

SAMMS:     He used to do it, too?  Tell me what you mean.

K.O.:      He used to do what Grandpa did, but he didn't say anything.

SAMMS:     So . . . .

K.O.:      And my Grandma June found out . . . every time we get caught, he's the one that asks me.

SAMMS:     Okay.  So help me understand.  You said, "[A.G.H.] used to do it, too?"  Like somebody was doing it to him, or he was doing it to someone else, or . . . .

K.O.:      He was doing it to me.

SAMMS:     To you.  Okay.  And then you said, "Every time you got caught . . . ."  Tell me what you mean by that.

K.O.:      They were asking me why I did it whenever I didn't.

SAMMS:     Oh.  Who was asking you that?

K.O.:      Um [long pause]. What I said I meant by that is that [long pause] . . . .

SAMMS:     Who was it that would catch you?

K.O.:      My Grandma June.

¶8     At the evidentiary hearing in January 2019, A.G.H. and K.O. testified regarding the statements K.O. made during the February 2013 forensic interview.  A.G.H. testified that he never sexually assaulted or had sexual intercourse with K.O., but they had consensually

5

played "doctor" as children where he touched "maybe her stomach area" and "maybe her chest." K.O. testified, "We both used to play doctor all the time because of the fact . . . I wanted to be a doctor, and I don't remember exactly, but I think he did too. Nothing sexual ever happened." When asked to clarify her statement during the interview that A.G.H. "did things like what Grandpa did," K.O. replied, "I didn't know what intercourse was at that time. I didn't know that that was not intercourse." Upon being asked, "So you thought that the things A.G.H. did were the same things that your grandfather did?" K.O. responded, "Yes. But I no longer think that."

¶9     At trial, K.O. testified in detail about the abuse she experienced at the hands of her grandfather. K.O. described the "game" where Hansen made her run around in the dark living room naked and afterwards, he would touch her vagina. She described that Hansen repeatedly touched her vagina, both over and under her clothes, and that the abuse happened "more than 50 times." She described where the abuse occurred in Hansen's home, and an incident that occurred in Hansen's truck. K.O. testified, "I was being basically dry humped," meaning Hansen rubbed his penis on K.O. while she sat on his lap. She described Hansen's threat, "Don't say anything or I'll get in trouble." She testified that although she did not remember Hansen raping her, she did remember reporting the incident during the February 2013 forensic interview ("I just remember saying it. I don't remember the actual story."). She also testified that during the February 2013 forensic interview, "I was being as honest as I possibly could."

6

**STANDARDS OF REVIEW**

¶10 We review evidentiary rulings for an abuse of discretion, which occurs "when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Daffin*, 2017 MT 76, ¶ 12, 387 Mont. 154, 392 P.3d 150. To the extent a court's evidentiary ruling is based on an interpretation of a constitutional right, our review is de novo. *State v. Hoff*, 2016 MT 244, ¶ 11, 385 Mont. 85, 385 P.3d 945 (citing *State v. Patterson*, 2012 MT 282, ¶ 10, 367 Mont. 186, 291 P.3d 556).

**DISCUSSION**

*Whether the District Court erred excluding evidence of the complaining witness's prior statements regarding an alleged "false accusation" of sexual assault.*

¶11 The Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation clauses of the Sixth Amendment "guarantee[] criminal defendants 'a meaningful opportunity to present a complete defense.'" *State v. Jay*, 2013 MT 79, ¶ 32, 369 Mont. 332, 298 P.3d 396 (quoting *Holmes v. S.C.*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006)). While states have broad latitude to establish rules excluding evidence from criminal trials, courts should avoid rules of evidence that abrogate the rights of a criminal defendant—those that "infring[e] upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998)); *Holmes*, 547 U.S. at 324, 125 S. Ct. at 1731.

7

¶12    One such rule of evidence is Montana's rape shield statute, which provides that "[e]vidence concerning the sexual conduct of the victim is inadmissible" unless it is evidence of the victim's past sexual conduct "with the offender" or to show the "origin of semen, pregnancy, or disease which is at issue in the prosecution." Section 45-5-511(2), MCA. We have considered the impact of the rape shield statute on a defendant's constitutional rights and found it serves a compelling state interest in preventing rape trials from becoming trials on the prior sexual conduct of the victims. *Mazurek*, 277 Mont. at 354-55, 922 P.2d at 478 (quoting *State v. Steffes*, 269 Mont. 214, 230, 887 P.2d 1196, 1206 (1994) ("The rape shield statute has been upheld as a legitimate interest justifying curtailment of the constitutional right to confront witnesses.")).

¶13    There are two further exceptions to the rape shield statute where the policy of protecting against the trial becoming a trial of the victim "is not violated or circumvented." *State v. Colburn*, 2016 MT 41, ¶ 44, 382 Mont. 223, 366 P.3d 258 (J. McKinnon, concurring). First, evidence related to a victim's prior false accusations of sexual assault may be admitted if the offered evidence can be "narrowed to the issue of the complaining witness' veracity." *State v. Anderson*, 211 Mont. 272, 284, 686 P.2d 193, 200 (1984). Second, evidence of the victim's sexual conduct may be admissible if it is "probative of the witness' state of mind, motive, or biases with respect to making the more current accusations." *Anderson*, 211 Mont. at 283, 686 P.2d at 199.

¶14    Neither the rape shield statute nor a criminal defendant's constitutional rights are absolute. *Colburn*, ¶ 25 (citing *State v. MacKinnon*, 1998 MT 78, ¶ 33, 288 Mont. 329, 957 P.2d 23; *State v. Johnson*, 1998 MT 107, ¶¶ 22-23, 288 Mont. 513, 958 P.2d 1182).

8

We have held that "limiting or barring a defendant's cross-examination of a complaining witness in a sex crime case where there is evidence of prior false accusations restricts [a] defendant's enjoyment of the worth of his constitutional rights to confront witnesses." *Mazurek*, 277 Mont. at 358, 922 P.2d at 479 (quoting *Anderson*, 211 Mont. at 284, 686 P.2d at 200). When the rape shield conflicts with a defendant's constitutional rights, the court must balance the defendant's right to present a defense and the victim's interests under the statute. *Colburn*, ¶ 25 (citing *State v. Lindberg*, 2008 MT 389, ¶ 53, 347 Mont. 76, 196 P.3d 1252). As such, the rape shield should not be applied "arbitrarily or mechanistically." *State v. Awbery*, 2016 MT 48, ¶ 20, 382 Mont. 334, 367 P.3d 346 (citations omitted).

¶15   A court may only admit evidence of prior accusations of sexual abuse if the court first determines: (1) the accusations were in fact made; (2) the accusations were in fact false; and (3) the evidence is more probative than prejudicial. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480 (citing *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989)). The trial court must order a hearing outside the presence of the jury to determine whether the evidence is admissible based on the above criteria. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480.

¶16   On appeal, Hansen argues his right to a meaningful opportunity to present a complete defense was inhibited when the District Court prevented admission of evidence of K.O.'s statements regarding A.G.H. during the February 2013 forensic interview. Hansen asserts K.O.'s statements were necessary to rebut the State's evidence, which included the video footage of K.O.'s accusations of Hansen in the same interview, to show that she was confused and making false statements. The State argues the District Court,

following the proper procedure under *Mazurek*, did not abuse its discretion when it found Hansen had not established either that K.O. made an accusation or that it was false. The State further argues that the prejudice of creating a trial within a trial about alleged sexual conduct of two five-year-old children far outweighed any minimal probative value.

¶17 The first prong of *Mazurek* requires the defendant to prove by a preponderance of the evidence that the victim made an accusation about a third party. To meet the burden of proof, the defendant must provide "independent competent evidence" to show that the victim "actually made" a sexual allegation against a third party. *See St. Germain v. State*, 2012 MT 86, ¶ 57, 364 Mont. 494, 276 P.3d 886 (holding the defendant failed to meet his burden of proof by only providing a letter from the victim's doctor stating her father "*might* have molested her in her sleep," but not that he did in fact molest her). Speculative or unsupported evidence of allegations are insufficient to "tip the scales in favor of a defendant's right to present a defense and against the victim's rights under the rape shield statute." *Lindberg*, ¶ 56 (quoting *Johnson*, ¶ 24).

¶18 The second prong requires that the accusation be "in fact false." *Mazurek*, 277 Mont. at 358, 922 P.2d at 480. This means the accusations must be adjudicated or admitted by the victim to be false. *Hoff*, ¶ 24. For the purposes of a *Mazurek* hearing, "adjudicated" does not necessarily mean a court has previously heard evidence and rendered a final judgment on the accusation, but rather, if the defendant has provided sufficient evidence during the *Mazurek* hearing, the court may adjudicate the falsehood of a previous accusation. *Hoff*, ¶ 24.

10

¶19    The District Court concluded after careful review of the forensic interview and testimony at the *Mazurek* hearing that Hansen failed to prove by a preponderance of the evidence that "an accusation in the first instance was made or that a false accusation was made against [A.G.H.]." The court followed the procedures set out in *Mazurek*. We will overturn a district court's decision only if we find an abuse of discretion. *Hoff*, ¶ 28. In this case, the evidence that K.O. made an accusation comes solely from the February 2013 forensic interview. The transcript reflects a child unclearly recounting incidents with another child. From the transcript and the testimony at the *Mazurek* hearing, what exactly K.O. asserted happened between her and A.G.H. is unclear. K.O. was eight years old at the time of the forensic interview, and she testified at the *Mazurek* hearing that "sleeping with" A.G.H. did not mean sexual intercourse because she did not know what that phrase meant in a sexual context in 2013. There is no other evidence in the record that clarifies what K.O. meant when she stated "[A.G.H.] used to do what Grandpa did, but he didn't say anything." The District Court did not abuse its discretion in determining Hansen failed to meet his burden of proof that K.O. made an accusation of sexual abuse against A.G.H.

¶20    Even if we assume K.O.'s statements in the interview constituted accusations against A.G.H., there was no clear evidence that those incidents did or did not happen. Both K.O. and A.G.H. recall playing "doctor" but adamantly deny any improper sexual contact. If what K.O. "accused" A.G.H. of was simply touching her stomach while playing doctor or sleeping next to each other during overnight sleepovers at Hansen's home, then it is unclear if her allegations were in fact false. Hansen's proffered evidence of K.O.'s statements about A.G.H. requires speculation both as to whether an accusation was made

11

and whether K.O.'s "accusations" were false. The record before us does not demonstrate that the District Court "exceeded the bounds of reason or acted without conscientious judgment." *Hoff,* ¶ *28.* The District Court did not abuse its discretion in finding Hansen failed to establish the first two prongs of the *Mazurek* test by a preponderance of the evidence.

¶21 Finally, even if the first two prongs of the *Mazurek* test were not met, the probative value of K.O.'s statements is extremely limited. Hansen asserts that K.O.'s testimony was "shaky" and that she did not remember any of the alleged abuse but only remembered recounting the story during the February 2013 forensic interview. Not only is that a mischaracterization of K.O.'s testimony at trial, in which she recounted in detail the sexual abuse she suffered "more than 50 times," the only episode of abuse K.O. could *not* recall was from her allegation of sexual intercourse without consent. Her "allegations" regarding A.G.H., on the other hand, involved two five-year-old children who certainly did not have the vocabulary or experience to discern whether "playing doctor" or "sleeping together" amounted to sexual assault. Under these circumstances, the proffered evidence would not have been probative of K.O.'s veracity, but would have required a trial within a trial, the exact type of probe into K.O.'s past sexual conduct that is protected by the rape shield statute. *See State v. Walker*, 2018 MT 312, ¶ 59, 394 Mont. 1, 433 P.3d 202.

¶22 The District Court performed a thorough inquiry and appropriately balanced K.O.'s rights under the rape shield statute with Hansen's constitutional rights. *See Walker*, ¶ 58. The District Court diligently considered the evidence at issue and weighed the parties'

competing interests.  The District Court did not abuse its discretion by excluding evidence of K.O.'s statements regarding A.G.H.

## CONCLUSION

¶23    The District Court did not abuse its discretion by granting the State's motion in limine as to K.O.'s prior statements about A.G.H.  This ruling did not violate Hansen's constitutional right to present a defense or confront his accuser.  Hansen's conviction is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE

13