FILED

10/25/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0137

DA 21-0137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 211

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

SHELBY BRYAN RAGNER,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-19-189-B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     William Boggs, Attorney at Law, Missoula, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

     Marty Lambert, Gallatin County Attorney, Bjorn Boyer, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  September 7, 2022

Decided:  October 25, 2022

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Shelby Bryan Ragner (Ragner) appeals from a January 25, 2021 District Court order sentencing Ragner to 10 years in Montana State Prison, with four years suspended. We affirm.

¶2 We restate the issues on appeal as follows:

*Issue One: Whether the District Court properly applied Montana's rape shield statute in excluding evidence concerning the victim's sexual conduct.*

*Issue Two: Whether the instructions provided by the District Court fully and fairly instructed the jury regarding the mental state applicable to charges of sexual intercourse without consent.*

*Issue Three: Whether the District Court's absence of a specific unanimity instruction resulted in reversible plain error.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On May 19, 2019, the State charged Ragner with aggravated sexual intercourse without consent (ASIWC). The charges followed an interview on March 18, 2019, between C.M., the victim, and Detective Amy Ross (Ross) of the Montana State University Police Department.

¶4 On March 8, 2019, C.M. and Ragner both joined a group of friends for a night of drinking and dancing. Ragner had previously told members of that group he found C.M. attractive. C.M. did not have romantic feelings toward Ragner. In the course of visiting multiple bars, C.M. and the other women in the group became intoxicated. Ragner had "too much" to drink but comparatively less so than the women. At various points in the

2

evening, Ragner came into unwanted physical contact with C.M. In response, C.M. told one of her friends not to leave her alone with Ragner.

¶5 A designated driver picked up the group up later that night and returned everyone to the same spot to sleep. C.M. and Ragner ended up on different parts of an L-shaped couch. At some point in the night, C.M. woke up with Ragner on her legs and his fingers inside of her vagina. When C.M. attempted to move upon discovering Ragner's penetrative act, she found herself unable to do so and "lost consciousness again."

¶6 In contrast, Ragner recalls the two of them engaging in "sexual talk" prior to any sexual acts. During this conversation, Ragner told C.M. that she was too drunk to consent to any sexual activity. C.M. "kept insisting, kissing, and grabbing him," and generally initiating physical contact. Ragner wanted to say "yes" to C.M.'s sexual advances "but [] felt it was the wrong thing to do." The pair then made out and digital and oral intercourse occurred.

¶7 On March 9, 2019, C.M. woke up to her alarm and left for work. Once at work, she noticed soreness, sharp pains in her vaginal area, and bite marks along her thighs. C.M. informed her manager that she had been sexually assaulted. C.M. left work and drove to her mother's home. The pair went to the hospital in Ennis. A sexual assault examination performed by Dr. Davenport of the Madison Valley Health Center detected bruising and pain, bite marks, and vaginal pain. Dr. Davenport also detected injuries to C.M.'s vagina and cervix and attributed those to some sort of forceful penetration.

¶8 Also on March 9, 2019, C.M. texted a friend who had attended the party. The texts referred to fragments of memories from the prior night. C.M. disclaimed any romantic

3

interest in Ragner and stated that even after having had alcohol her feelings toward men do not change. She specified that she did not consent to any sexual activity they engaged in. And C.M. also sent a text that read, "I'm really embarrassed. Like really, what the hell. How is it that this has happened to me three times now. Jesus, I need to quit drinking, at least around men…" During a pretrial interview, C.M. told defense counsel that on the two occasions alluded to in her text string she felt that her boyfriends had been sexually coercive while they were intoxicated. C.M. stated that she was not unconscious during the two occasions. She recalled that her boyfriends took advantage of her use of alcohol, in part, to pressure her to have sex.

¶9 The State filed a motion in limine to exclude the above quoted portion of the text exchange between C.M. and her friend related to the prior incidents of related sexual encounters. At an October 19, 2020 status conference, defense counsel reported that an evidentiary hearing would not be necessary for the court to rule on the motion. On October 20, 2020, the first day of trial, Ragner filed a written objection to the motion, and the District Court heard oral argument. The motion was granted.

¶10 Following the settlement of jury instructions, the District Court declined to use the knowingly definition offered by the defense counsel. The court defined knowingly having sexual intercourse with another as "when the person is aware of his or her conduct," and instructed the jury that "[a] person who knowingly has sexual intercourse with another person without consent commits the offense of sexual intercourse without consent." Ragner did not object to the District Court's consent instructions. Ragner did not request a specific unanimity instruction on "without consent" versus "incapable of consent."

¶11 On the charge of ASIWC, the jury found Ragner not guilty. On the lesser included charge of sexual intercourse without consent, the jury found Ragner guilty. The District Court sentenced Ragner to ten years in prison with four years suspended.

**STANDARD OF REVIEW**

¶12 We review evidentiary rulings for an abuse of discretion, which occurs "when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Daffin*, 2017 MT 76, ¶ 12, 387 Mont. 154, 392 P.3d 150. To the extent a court's evidentiary ruling is based on an interpretation of a constitutional right, our review is de novo. *State v. Hoff*, 2016 MT 244, ¶ 11, 385 Mont. 85, 385 P.3d 945 (citing *State v. Patterson*, 2012 MT 282, ¶ 10, 367 Mont. 186, 291 P.3d 556).

¶13 A review of a district court's jury instructions in a criminal case assesses whether the instructions, when considered as a whole, fully and fairly instructed the jury on the law applicable to the case. *State v. Daniels*, 2019 MT 214, ¶ 26, 397 Mont. 204, 448 P.3d 511. Even if an instruction error did occur, this Court will not reverse on such a claim unless it also finds that the district court abused its discretion in a way that prejudicially affected a defendant's substantial rights. *State v. Kaarma*, 2017 MT 24, ¶ 7, 386 Mont. 243, 390 P.3d 609.

¶14 The occurrence of substantial injustice resulting from a court acting arbitrarily without employment of conscientious judgment or beyond the bounds of reason means that the court abused its discretion. *State v. Weldele*, 2003 MT 117, ¶ 72, 315 Mont. 452, 69 P.3d 1162 (citation omitted).

5

¶15 Claims of errors implicating a criminal defendant's fundamental constitutional rights may receive plain error review, even if no contemporaneous objection was made. *State v. Lackman*, 2017 MT 127, ¶ 9, 387 Mont. 459, 395 P.3d 477. This Court will exercise plain error review in cases where failing to review the claimed error may result in a manifest miscarriage of justice, may leave questions of fundamental fairness unsettled, or may compromise the integrity of the judicial process. *Lackman*, ¶ 9.

## DISCUSSION

¶16 *Issue One: Whether the District Court properly applied Montana's rape shield statute in excluding evidence concerning the victim's sexual conduct.*

¶17 Ragner contends that the District Court improperly applied Montana's rape shield statute to exclude a portion of C.M.'s text messages. He relies on *State v. Colburn*, 2016 MT 41, ¶ 25, 382 Mont. 223, 366 P.3d 258, to argue that the District Court had a legal obligation to perform a balancing test between the defendant's constitutional right to present a defense and a victim's rights under the statute.

¶18 Montana's rape shield statute calls for the exclusion of evidence concerning the sexual conduct of the victim, with few exceptions. Section 45-5-511(2), MCA. The first statutory exception applies where the victim's past sexual conduct *with the offender* is at issue. Section 45-5-511(2), MCA. The second statutory exception applies where evidence of specific instances of the victim's sexual activity to show the semen, pregnancy, or disease is at issue. Section 45-5-511(2), MCA. This Court has identified two other exceptions: evidence related to a victim's prior false accusations of sexual assault if the offered evidence can be narrowed to the issue of the complaining witness' veracity; and,

6

evidence of the victim's sexual conduct if it is probative of the witness' state of mind, motive, or biases with respect to making the more current accusations. *State v. Hansen*, 2022 MT 163, ¶ 14, 409 Mont. 495, 515 P.3d 799.

¶19 In *Colburn*, we acknowledged that prior to a district court applying the rape shield statute to exclude evidence, the court should consider whether the evidence is relevant and probative; whether the evidence is merely cumulative of other admissible evidence; and, whether the probative value of the evidence is outweighed by its prejudicial effect. *Colburn*, ¶ 25. These factors prevent the automatic exclusion of evidence that can be narrowed to the issue of the complaining witness' veracity. Notably, this list is entirely devoid of mandated weights that a district court must apply and lacks any mention of explicit triggers that would prevent the application of the rape shield statute.

¶20 Our subsequent decisions have interpreted *Colburn* as establishing guidelines for district courts to follow to prevent the arbitrary or mechanistic application of the rape shield. *See Hansen*, ¶ 14 (citing *Colburn* for the proposition that the rape shield statute does not apply absolutely); *State v. Walker*, 2018 MT 312, ¶ 56, 394 Mont. 1, 433 P.3d 202 (using the factors set forth in *Colburn* as a framework to assess whether the rape shield statute had been mechanically applied). Where district courts have followed those guidelines, we have upheld decisions to admit evidence covered by the rape shield statute only where an exception applies. *See Hansen*, ¶ 22; *Walker*, ¶ 56.

¶21 We upheld the district court's application of the rape shield in *Walker* based on its methodical review of the factors favoring the exclusion and admission of the evidence in question. *Walker*, ¶¶ 57-58. The district court inquired into the evidence in question,

provided the parties with opportunities to explain their respective cases for and against the exclusion of that evidence, and considered the merits of each of those explanations. *Walker*, ¶¶ 57-58.

¶22 Here, the District Court followed similar steps. After the State filed its motion in limine to exclude a portion of the text, the District Court held a status conference—during which defense counsel stated that the court need not have an evidentiary hearing prior to ruling on the motion. Defense counsel had another opportunity to argue for the inclusion of the evidence when, on the first day of trial, it filed a written objection to the State's motion. And defense counsel had the chance to argue its points further when the court heard oral argument on the State's motion. The District Court then granted the State's motion in an order that summarized its consideration of the arguments made by both sides and its evaluation of the applicable case and statutory law.

¶23 Though, as Ragner asserts, the excluded evidence may have been "reliable" and "highly probative," the District Court considered those aspects before properly applying the rape shield statute to exclude the evidence. Ragner claims that C.M. opened the door to the admission of the evidence by testifying to her lack of interest in Ragner when she was sober and stating that such feelings would not change while under the influence of alcohol. However, nothing in the record suggests she had a romantic interest in either of the two men referred to in the excluded text.

¶24 Even if the evidence were as probative as Ragner regards it, the blanket reception of all reliable and highly probative evidence in cases such as this one would result in the circumvention of laws designed to protect the legitimate interests of the victim. *State v.*

8

*Van Pelt*, 247 Mont. 99, 104, 805 P.2d 549, 552-53 (1991). The purpose of the rape shield statute is to prevent the trial from becoming a trial of the victim. *State v. MacKinnon,* 1998 MT 78, ¶ 35, 288 Mont. 329, 957 P.2d 23. The District Court fulfilled that purpose by making a fact-intensive inquiry, weighing the reliability of the evidence and the possibility of that evidence having a prejudicial effect on the victim, and then reaching a reasoned decision.

¶25 *Issue Two: Whether the instructions provided by the District Court fully and fairly instructed the jury regarding the mental state applicable to charges of sexual intercourse without consent.*

¶26 Section 45-5-503(1), MCA, defines the offense of sexual intercourse without consent as "[a] person who knowingly has sexual intercourse with another person without consent or with another person who is incapable of consent[.]" This definition was provided to the jury as Instruction 16.

¶27 The District Court also provided the jury with following definition of consent as Instruction 6:

> "Consent" means words or overt actions indicating a freely given agreement to have sexual intercourse or sexual contact and is further defined but not limited by the following:
> a. An expression of lack of consent through words or conduct means there is no consent or that consent has been withdrawn;
> b. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue does constitute consent; and
> c. Lack of consent may be inferred based on all the surrounding circumstances and must be considered in determining whether a person gave consent.

¶28 The District Court rejected Ragner's proposed jury instruction to define "knowingly," with respect to the "without consent" element, as "the person is aware that

9

the circumstance exists." The District Court instead instructed the jury that "knowingly," with respect to the totality of the elements of the crime of sexual intercourse without consent, as "the person is aware of his or her conduct."

¶29 Ragner faults the District Court for failing to instruct the jury "as to the critical mental element" of ASIWC. Ragner claims that his defense was prejudiced by the given jury instructions because—he alleges—the instructions directed the jury's attention away from whether Ragner knew C.M. did not consent to the intercourse and relieved the State of proving beyond a reasonable doubt that Ragner knew C.M. did not consent.

¶30 A district court has broad discretion in formulating and approving jury instructions. *Kaarma*, ¶ 27 (citation omitted). A district court's function during trial is to instruct the jury accurately and to correctly state the law applicable in the case. *Daniels,* ¶ 34 (citation omitted).

¶31 Ragner argues for a heightened standard for review of district court jury instructions. He interprets *State v. Azure*, 2005 MT 328, 329 Mont. 536, 125 P.3d 1116, as requiring a district court to specify a definition of "knowing" for every distinct kind of element in a crime. *Azure* offers no such rule. Relatedly, he cites *State v. Lambert*, 280 Mont. 231, 236-37, 929 P.2d 846, 849-50 (1996) in support of an alleged obligation on district courts to not omit any of the specific definitions of "knowingly" related to a crime.

¶32 Ragner's interpretation of *Azure* diverges from the actual holding. The *Azure* Court simply repeated our determination that courts must determine which of the four definitions of "knowingly" is applicable to the case and instruct the jury accordingly. *Azure,* ¶ 20.

¶33 Ragner also misstates the rule set forth by the *Lambert* Court. The Court applied § 45-2-103(4), MCA, to reverse a district court's application of a definition of knowingly that would lead to unfair results in criminal endangerment cases. *Lambert,* 280 Mont. at 236-37, 929 P.2d at 849-50. Section 45-2-103(4), MCA, states that "[i]f the statute defining an offense prescribes a particular mental state with respect to the offense as a whole without distinguishing among the elements of the offense, the prescribed mental state applies to each element." The district court instructed the jury that a defendant need only be "aware of his conduct" to "knowingly" act. *Lambert*, 280 Mont. at 237, 929 P.2d at 850. We reversed on that instruction reasoning that if criminal endangerment applied in cases where the defendant merely appreciated their conduct, rather than where the defendant was aware of a high probability that the conduct in which he was engaging would cause a substantial risk of death or serious bodily injury to another, then even driving a car could be criminal. *Lambert*, 280 Mont. at 236, 929 P.2d at 849.

¶34 We do not find that the District Court acted arbitrarily or beyond the bounds of reason. The District Court properly used its discretion and followed the statutory requirements of § 45-2-103(4), MCA, by instructing the jury to apply an appropriate definition of knowingly.

¶35 *Issue Three: Whether the District Court's absence of a specific unanimity instruction resulted in reversible plain error.*

¶36 Though Ragner failed to preserve the issue below, he asks this Court to apply plain error review to the District Court's general unanimity instruction. He alleges that the District Court's instruction violated his constitutional right to a unanimous verdict because

11

the instruction did not require all of the jurors to agree whether C.M. was incapable of consenting or whether she did not affirmatively consent.

¶37    Criminal verdicts must be unanimous. Mont. Const. Art. II; *State v. Wells*, 2021 MT 103, ¶¶ 17-20, 404 Mont. 105, 485 P.3d 1220. Doubts about the unanimity of a verdict implicates the fundamental fairness of the trial. *State v. Dasen*, 2007 MT 87, ¶ 39, 337 Mont. 74, 155 P.3d 1282. Here, the District Court provided a general instruction that all jurors must agree on the verdict.

¶38    District courts must give specific unanimity instructions when a single criminal statute creates multiple crimes in order to prevent jurors from potentially finding the defendant guilty of two different crimes. *Wells*, ¶ 17. For instance, in *State v. Weldy*, 273 Mont. 68, 77-78, 902 P.2d 1, 6-7 (1995), we required a specific unanimity instruction with respect to a felony assault statute, § 45-5-202, MCA, that created separate offenses: one required a person to cause bodily injury with a weapon; the other required a person to cause reasonable apprehension of bodily injury with a weapon. By contrast, in *Kills on Top v. State,* 273 Mont. 32, 55-56, 901 P.2d 1368, 1383 (1995), we did not require such an instruction after determining that a multi-part criminal statute, aggravated kidnapping, § 45-5-303(1)(c), MCA, described alternative means of satisfying the common element of a single crime. However, the Court acknowledged that it may have reached a different decision had the appellant demonstrated that the alternatives were "so morally disparate as to represent inherently separate offenses." *Kills on Top*, 273 Mont. at 56, 901 P.2d at 1384.

¶39    Here, the District Court instructed the jury as Instruction 17:

To convict the Defendant of sexual intercourse without consent, the State must prove the following elements:

1. That the Defendant had sexual intercourse with C.M.;

**AND**

2. That the act of sexual intercourse was without C.M.'s consent;

**AND**

3. That the Defendant acted knowingly.

If you find from your consideration of all the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

¶40 The District Court provided a general instruction requiring that the jury unanimously find Ragner guilty of the stated elements. It did not need to provide a separate unanimity instruction. Section 45-5-503(1), MCA, provides for alternative means of satisfying the consent element but Ragner fails to demonstrate that the two means of having sexual intercourse absent the affirmative consent of the victim are so morally disparate as to represent inherently separate offenses.

¶41 Ragner mischaracterizes § 45-5-503(1), MCA, as a single criminal statute that creates multiple crimes. Section 45-5-503(1), MCA, criminalizes conduct where "[a] person [] knowingly has sexual intercourse with another person without consent or with another person who is incapable of consent[.]" Ragner relies on the "or" in the subsection to support his contention that the statute actually contains two different crimes contingent upon the reason for the absence of the victim's freely given agreement to have sexual intercourse.

¶42 Neither the text of § 45-5-503(1), MCA, nor the definitions underlying the key provisions of that subsection support Ragner's contention that the "or" bifurcates the

13

subsection into two different crimes. We previously concluded that the presence of an "or" is not determinative as to whether a statute creates two different crimes. *See Kills on Top*, 273 Mont. at 55-56, 901 P.2d at 1383-84. The inclusion of these two clauses in the same subsection supports the conclusion that, in referring to sexual intercourse with another person without consent and to sexual intercourse with another person who is incapable of consent, the subsection described alternative means of satisfying the absence of freely given consent. The law criminalizes intercourse without freely given consent.

¶43 The District Court properly instructed the jury by delivering a general unanimity instruction. We decline to exercise plain error review.

## CONCLUSION

¶44 We affirm the District Court's decision to apply the rape shield law to exclude a portion of C.M.'s texts. We conclude that the District Court's jury instructions fully and fairly instructed the jury on the applicable law. We do not identify any basis for reversal based on plain error arising from the District Court's general unanimity instruction.

¶45 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

14