FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0490

DA 24-0490

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 145

SHELBY RAGNER,

        Petitioner and Appellee,

   v.

STATE OF MONTANA,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause Nos. DV-23-478B and
DC-19-189B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

          Audrey Cromwell, Gallatin County Attorney, Afton Martinez, Deputy
County Attorney, Bozeman, Montana

      For Appellee:

          Jami Rebsom, Jami Rebsom Law Firm PLLC, Livingston, Montana

          Submitted on Briefs:  April 30, 2025

                  Decided:  July 8, 2025

Filed:

                              _____
                                    Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 This appeal arises from the Eighteenth Judicial District Court, Gallatin County, which granted Shelby Ragner's petition for postconviction relief, finding that his trial counsel, Alexander Jacobi, rendered ineffective assistance of counsel by failing to interview and present the testimony of Max Weimer.

¶2 We address the following restated issue:

*Whether the District Court erred in granting Ragner's petition for postconviction relief due to ineffective assistance of counsel.*

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 19, 2019, the State charged Shelby Ragner with aggravated sexual intercourse without consent, alleging that Ragner had sexual intercourse with C.M. without her consent while she was severely intoxicated. Ragner was represented by attorney Alexander Jacobi, who filed his notice of appearance on July 1, 2019. The next day, Ragner sent Jacobi a letter in which he detailed everything he could remember relating to the events that transpired during the incident and shortly thereafter; he did not mention Max Weimer. Ragner also provided Jacobi a list of witnesses and other people to interview; he did not list Max Weimer.

¶4 Following a jury trial from October 20-23, 2020, at which Jacobi did not call Max Weimer as a witness and Ragner did not testify, the jury found Ragner not guilty of aggravated sexual intercourse without consent but convicted him of sexual intercourse without consent (SIWOC). The trial evidence included testimony from multiple witnesses

2

and medical evidence that described C.M.'s severe intoxication and significant injuries, and from Ragner himself admitting in recorded statements to Detective Ross that C.M. was "too intoxicated to consent."

¶5 At his sentencing hearing, on January 25, 2021, Jacobi submitted a letter from Ragner's friend, Max Weimer, addressing Ragner's good character and expressing concern that Ragner had not been given the opportunity to present his account of the events. In his letter, Weimer did not mention observing injuries on Ragner. The District Court sentenced Ragner to ten years in prison, with four years suspended. Ragner filed a direct appeal to this Court raising several issues, which we denied, affirming his conviction in *Ragner I.*[1]

¶6 On May 12, 2023, Ragner filed a petition for postconviction relief alleging Jacobi was ineffective by failing, among other claims, to interview and call exculpatory witnesses at trial, including Ragner's therapist[2] and Weimer. During the postconviction evidentiary hearing, Weimer testified that Ragner visited him the morning after the incident. Weimer described Ragner as disheveled and in shock. He stated Ragner mentioned he had bruises "all over his body," but Weimer only saw "a few marks" on Ragner's arm that appeared to be "small pock marks, hickeys, and bite marks." Weimer specifically testified he saw these

---

[1] *State v. Ragner*, 2022 MT 211, 410 Mont. 361, 521 P.3d 29.

[2] The District Court concluded that Jacobi made a valid tactical decision not to call Ragner's therapist as a witness. Addressing another basis for Ragner's IAC claim, the District Court also concluded that Jacobi had made a valid tactical decision to decline to retain an expert witness to rebut the State's physician expert because he did not want to emphasize the physician's report which included Ragner's admission to sexual contact.

3

injuries shortly after the incident, an observation that was potentially supportive of Ragner's theory of consent and C.M.'s aggressive behavior.

¶7 Although Jacobi testified that he was aware Ragner had spoken with Weimer hours after the incident, he explicitly stated that he was unaware that Weimer observed injuries to Ragner, highlighting the significance of Jacobi's failure to verify the value of Weimer's potential testimony through a basic investigation. Jacobi noted Ragner provided him photos showing only minimal discoloration on Ragner's arm, which Jacobi considered unpersuasive compared to C.M.'s extensive documented injuries. Jacobi explained that he failed to investigate Weimer's potential testimony, in part, because Ragner did not list Weimer as a potential witness in the list he provided Jacobi prior to trial and Jacobi assumed Weimer's testimony would offer little value and would be contradicted by the physical evidence and Ragner's own statements to law enforcement.

¶8 Attorney Colin Stephens, an expert witness for Ragner at the postconviction hearing, testified that Jacobi should have interviewed and considered calling Weimer, despite acknowledging Weimer's testimony was not a "silver bullet." Stephens admitted he had not reviewed the entire discovery file, including photographic evidence and Ragner's recorded admissions to Detective Ross. Stephens further testified that Jacobi's preparation, consisting of only approximately ten hours of client contact, fell significantly below the recommended standard of forty hours typically necessary for serious felony charges.

¶9 On August 6, 2024, the District Court found that Weimer's testimony could have shown that the sexual encounter was consensual, so Jacobi's failure to recognize or explore

4

the significance or value of Weimer's testimony fell below the standard of care necessary for cases involving sexual intercourse without consent, rendering Jacobi's performance ineffective, thus prejudicing Ragner. The State appeals this decision.

**STANDARD OF REVIEW**

¶10 We review a district court's decision on postconviction relief to determine whether factual findings are clearly erroneous and conclusions of law de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

¶11 We review claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

**DISCUSSION**

¶12 *Whether the District Court erred in granting Ragner's petition for postconviction relief due to ineffective assistance of counsel.*

¶13 On appeal, the State contends that the District Court misapprehended the weight of Weimer's potential trial testimony and incorrectly concluded that Ragner overcame the strong presumption that Jacobi performed within a reasonable range of professional assistance. Further, the State argues that Ragner failed to tell Jacobi that he visited Weimer the morning after the incident, thus giving no reasonable basis for Jacobi to know of Weimer's existence, so that Jacobi's not calling Weimer as a witness did not rise to deficient performance. Finally, the State asserts that the District Court erred in reasoning that there was a reasonable probability that Weimer's testimony would have led to a different outcome at trial.

¶14     Ragner argues that the District Court correctly granted his petition for postconviction relief by reiterating his argument from his petition.  Other than a few mentions of Weimer's potential testimony, Ragner focuses on issues the District Court negated or declined to address—Jacobi's failure to investigate C.W.'s claim of assault earlier the same night,[3] to retain an expert witness to address the State expert witness's potential biases, and to prepare sufficiently for trial and communicate with Ragner, none of which alters our analysis of whether Ragner was prejudiced by Jacobi's representation.

¶15     When analyzing ineffective assistance of counsel claims, we utilize the two-pronged test articulated in *Strickland*.  *State v. Miner*, 2012 MT 20, ¶ 11, 364 Mont. 1, 271 P.3d 56. Under the *Strickland* test, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant by undermining confidence in the outcome.  *Miner*, ¶ 11.  A defendant claiming ineffective assistance of counsel must establish both deficient performance and resulting prejudice. *Miner*, ¶ 11.  If there is an insufficient showing under one prong of the *Strickland* test, we need not address the other.  *Whitlow*, ¶ 11.

¶16     Even if arguendo Jacobi's performance was deficient, Ragner has not demonstrated prejudice—a showing of a reasonable probability that, but for Jacobi's error, the trial

_____

[3] Ragner did not raise the issue of Jacobi's failure to investigate C.M.'s report of assault earlier that night at the Rockin' R Bar, but his attorney questioned Jacobi about it at the postconviction hearing and Jacobi was unsure whether he asked C.M. about it when he interviewed her. C.M. testified at trial that while waiting outside the Rockin' R Bar when the group left to go home, Ragner put his hands over her mouth and nose as she was trying to get her friends' attention and would not let go but held her up against him when she tried to push him away.  Her friend Marie saw Ragner holding C.M. up against the wall with his hands up around C.M's face and neck.  *See* Judge Trial Tr. day 2 at 176-177; Judge Trial Tr. day 1 at 77-78.

6

outcome would have differed—as required under the second prong of *Strickland*. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *State v. Walter*, 2018 MT 292, ¶ 14, 393 Mont. 390, 431 P.3d 22. Weimer's limited observation of Ragner's injuries—only "a few marks" on the arm—is consistent with Ragner's own recorded admissions to Detective Ross describing only minor injuries inflicted by C.M. Weimer's testimony consequently did not directly contradict or significantly alter the evidentiary picture presented to the jury, which strongly demonstrated C.M.'s incapacity to consent. Further, Weimer did not observe the incident and had no direct knowledge of whether C.M. consented or whether she was capable of consenting given her state of intoxication. Most importantly, the State presented overwhelming evidence of C.M.'s non-consent, including medical evidence of C.M.'s severe intoxication, extensive documented injuries, and Ragner's own admissions that C.M. was too intoxicated to consent. Although Jacobi did not know precisely what Weimer had observed regarding Ragner's injuries due to his failure to investigate, even if Weimer had testified consistently with his postconviction testimony, evidence of limited injuries Weimer observed on Ragner would not reasonably have affected the jury's verdict, given the compelling evidence of C.M.'s incapacity to consent. Weimer's testimony regarding Ragner's injuries could not plausibly negate the overwhelming evidence of C.M.'s severe intoxication, extensive documented injuries, and Ragner's prior statements, which significantly undermined any claim of consensual sexual intercourse or injury. Given the totality of evidence presented at trial, Weimer's limited testimony would not reasonably have altered the jury's determination that C.M. was incapable of consent due to her intoxication and therefore would not reasonably have led to a different outcome.

7

¶17 While Jacobi's failure to verify his assumptions about Weimer's testimony was professionally unreasonable, the prejudice prong of *Strickland* requires more than a mere possibility of a different result—it requires a probability sufficient to undermine confidence in the trial's outcome. Here, that probability does not exist given the overwhelming evidence the State presented regarding C.M.'s severe intoxication and her extensive documented injuries. Weimer's testimony regarding limited injuries to Ragner's arm simply does not undermine confidence in the jury's verdict to the extent required by *Strickland*. Given the medical evidence and Ragner's recorded admissions, the jury had more than sufficient basis to conclude C.M. lacked capacity to consent, independent of the limited testimony Weimer could have offered. Therefore, although Jacobi's performance was deficient, Ragner has failed to satisfy the prejudice prong of the *Strickland* test, and the District Court's conclusion to the contrary is legally erroneous.

¶18 Ragner urges the Court to affirm on additional ineffective assistance arguments he raised in the District Court, arguing that Jacobi's failure to adequately investigate the case and prepare Ragner to testify caused him prejudice. "[W]e may uphold a judgment on a basis supported by the record, even if the district court applied a different rationale." *State v. Knippel*, 2018 MT 144, ¶ 16, 391 Mont. 495, 419 P.3d 1229 (citing *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 25, 365 Mont. 375, 286 P.3d 241). To the extent that we have not already addressed his additional claims, we decline to do so further. Jacobi testified in detail at the postconviction hearing about the investigation he and his investigator had done to prepare the defense. Aside from conclusory arguments, Ragner has not demonstrated error in the District Court's failure to accept his additional claims.

8

## CONCLUSION

¶19    After careful consideration of the record and the arguments before us, we hold that the District Court erred in concluding that Jacobi provided ineffective assistance of counsel under *Strickland*.    Whether or not Jacobi's representation fell below an objectively reasonable standard of professional conduct by failing to investigate Weimer's potential testimony adequately, we conclude there was no prejudice.    Given the overwhelming evidence supporting Ragner's conviction, confidence in the trial outcome remains unshaken.

¶20    Reversed and remanded for amendment of the order consistent with this opinion.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA